Benny Lee CASE et al., Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NUMBER 1547, etc., et al., Defendants,

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, (I.B.E.W.), Third Party Plaintiffs,

v.

ALASKA CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, Third Party Defendant.

Civ. No. A77–65.

United States District Court, D. Alaska.

Oct. 13, 1977.

Edmund J. Rice, Anchorage, Alaska, for plaintiffs.

Thomas X. Dunn, Sherman, Dunn, Cohen & Leifer, Washington, D. C., Hugh Hafer, Hafer, Cassidy & Price, Seattle, Wash.,

Howard S. Trickey, Josephson & Trickey, Inc., Anchorage, Alaska, for defendants IBEW, Pillard, Vinson & Taylor.

Robert M. Goldberg, Anchorage, Alaska, for defendant International Brotherhood of Electrical Workers, Local Union 1547.

Allen McGrath, Paul W. Koval, Graham & James, Anchorage, Alaska, for third party defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

■ THIS CAUSE comes before the court on plaintiffs' motion for summary judgment and motion to file an amended complaint.[1]

Plaintiffs are individual members of the International Brotherhood of Electrical Workers, Local 1547 (hereinafter IBEW local or local union). Defendants are the local union, the International Brotherhood of Electrical Workers (hereinafter IBEW or international union) and individual officers of both the IBEW local and international union.[2] Third party defendant is the local chapter of an organization which represents employers in the electrical industry. This organization frequently negotiates and contracts on behalf of employers of IBEW members with the IBEW on labor/management matters. It appears that this arrangement has succeeded in promoting labor peace in the industry. *See generally Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886, 894 (4th Cir. 1963).

In 1974 a resolution was passed at a convention of the IBEW authorizing the International officers to "negotiate" with NECA for improvements in pension benefits paid to the National Electrical Benefit Fund (NEBF). This fund essentially is a pension fund for IBEW members which is funded by NECA members.

In December, 1976, the local union received notice that a contract between the IBEW and NECA had been entered into. The international union required the local union to incorporate the terms of the new contract into the local contracts. Those terms admittedly and obviously involved some concessions by the IBEW for which contributions to the pension fund were increased from $30,000,000 per year to $90,-000,000 per year. The effective date of the new contract was July 1, 1977.

The essence of the complaint by these individuals is that under the international union's constitution the members of the local union were required to vote on the new contract before it was effective. It is uncontradicted that neither this local nor any other was given the right to vote on this contract.

In addition the complaint states claims based on the union discipline of individual members and failure to inform union members of their rights.

### I. Jurisdiction

*Contract Claims*

In its memorandum issued on plaintiffs' motion for a preliminary injunction the court considered certain jurisdictional issues. It declined to rule upon those issues at that time, however, as the motion was deemed not well taken substantively. Those issues must now be resolved.

■ Plaintiffs' first basis for jurisdiction is § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. Their contention is that the constitution forms a contract between the international union and its members which provides a basis for a § 301 claim. While some courts have so held, *see Parks v. IBEW*, 314 F.2d 886, 914–915 (4th Cir. 1965), those cases have generally involved actions between local un-

---

1. The court notes that defendants have requested that summary judgment be entered in their favor without the formality of a motion. If the defendants are substantively correct this procedure is proper. Wright & Miller, *Federal Practice & Procedure*, § 2720, pp. 467–68.

2. The court notes that the second amended complaint in this action seeks relief only against the union officials and not the union itself. *See* pg. 862, *infra.*

ions and their parent union. In the Ninth Circuit it is well established that in an action between individuals and their union over issues unrelated to a collective bargaining agreement, the constitution will not support § 301 jurisdiction. *Hotel and Restaurant Employees Local 400 v. Svacek*, 431 F.2d 705, 706 (9th Cir. 1970). Not answered definitively in this Circuit is whether the constitution provides a basis for jurisdiction under § 301 when the dispute is between individuals and the union over their constitutional rights yet also relates to a collective bargaining agreement such as the present case. The court holds that it does not.

The basis for this holding is found in the language of *Svacek, supra.* In that case the court stated "Nor do we believe that it was the intent of Congress for the courts to use the Labor Management Relations Act to police intra-union problems." *Id.* at 706. This suit, as between the individuals and their union, although relating to a collective bargaining agreement, is essentially an intra-union dispute over constitutional or statutory rights. Jurisdiction does not lie under § 301 for such disputes. *See also Smith v. United Mine Workers*, 493 F.2d 1241, 1244 (10th Cir. 1974).

The second basis for jurisdiction is § 101 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411. It is asserted under this claim that these members have been denied the equal right to vote as is required by § 101. The claim here, however, is not that these union members have been denied rights conferred on others. Rather they contend that no one has been given this right. In *Calhoon v. Harvey*, 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964), the Supreme Court stated in a § 101 case that

> The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others.

■ Based on this rationale the Court held that there was no claim under § 101. This reasoning has been adopted by other courts in circumstances similar to that herein. *See Aikens v. Abel*, 373 F.Supp. 425, 434 (W.D.Penn.1974); *Cf. Lux v. Blackman*, 546 F.2d 713, 716 (7th Cir. 1976); *Smith v. United Mine Workers*, 493 F.2d 1241, 1244 (10th Cir. 1974). Whether or not these members were treated properly or fairly, they were treated equally and there is no § 101 claim.

As the final basis for the claim plaintiffs allege a violation of § 501 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 501. Defendants assert that § 501 may only be invoked to protect financial or monetary trust obligations. Plaintiffs assert a broader reading. The court notes that here again the issue squarely presented remains unresolved in this Circuit. *Kerr v. Shanks*, 466 F.2d 1271, 1275 n. 2 (9th Cir. 1972). For reasons that subsequently appear the court is not compelled to reach this issue with regard to the injunctive relief sought.

Assuming that jurisdiction is appropriate under § 501 and that plaintiffs are successful in their claim they have requested two types of remedies which relate to the NECA–IBEW contract. In both their first amended complaint and proposed second amended complaint they seek a declaratory judgment and injunctive relief.

■ The essence of their prayer for injunctive relief is a request that the court set aside the NECA–IBEW contract and require union approval thereof. This remedy clearly is a request to void the contract or declare it void, and it is a request to which NECA is an indispensible party. 7 Wright & Miller, *Federal Practice and Procedure*, § 1613, pp. 135–136; *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975).

Plaintiffs, however, steadfastly maintain their position that they do not desire to join NECA. This position appears to be related to their assertion that the contract sued upon is the union's constitution. While that constitution may relate to their ability to obtain § 301 jurisdiction it has little to do with the nature of the relief sought herein, i. e., voiding the NECA–IBEW agreement.

■ It is unlikely that plaintiff could obtain jurisdiction over NECA under § 501 and they have conceded as much. *See* Supp.Memo., S.J., p. 2, lns. 25 et seq. It is also clear that NECA cannot be joined as a pendent party. *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977). The issue then is whether this claim should be dismissed based on the failure or inability to join NECA. Rule 19(b), Fed.R.Civ.Pro., delineates four factors which should guide the court in making this determination. They are

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

From the previous discussion it is clear that factors first, second, and third, weigh strongly against plaintiffs. While it might be possible to fashion some remedy relating solely to the unions other than voiding the NECA–IBEW contract plaintiffs have made it quite clear that this is the essence of the relief they seek.

The fourth factor presents a more difficult problem. As is clear from the previous discussion these plaintiffs do not have claims under the other bases pleaded and a dismissal of this claim for nonjoinder may leave them without a remedy. However, it first should be noted that this is but one of four factors and must be balanced against the other three. 7 Wright & Miller, *Federal Practice and Procedure,* § 1608, p. 81. In this case the balance tips toward dismissal. *Lomayaktewa v. Hathaway,* 520 F.2d 1324, 1326 (9th Cir. 1975).

Secondly, it is probable that these plaintiffs could assert a claim over which the court would have jurisdiction for the breach of the duty of fair representation. *Beriault v. Local 40, Super Cargoes & Check. of I. L. & W. U.,* 501 F.2d 258, 263–64 & 266 (9th Cir. 1974). For reasons unknown to the court plaintiffs have continuously declined to adopt such a course. Perhaps the reason is that plaintiffs do not attack the fairness of the new contract. The essence of plaintiffs' argument is stated in their supplemental memorandum in support of summary judgment wherein they state:

> Plaintiffs allege neither a breach of duty of fair representation. . . . Therefore, if plaintiffs made any claim against NECA, they would be without judicial remedy against them under the provisions of federal law *upon which they have relied.*

Memorandum, p. 3 (Emphasis added). It is thus clear that plaintiffs are attempting to force the court to use their jurisdictional bases to grant the relief which they desire. The court will not accede to this desire under the guise of the fourth factor of Rule 19(b). If plaintiffs desire relief against NECA in the form of invalidating the contract or some other relief against the unions they must use the jurisdictional bases which allow such relief. They cannot force the court into retaining the suit without proper jurisdiction over NECA while seeking relief which would seriously affect NECA by refusing to rely upon a theory which might be a proper means of obtaining relief. The § 501 claim must be dismissed as to injunctive relief due to lack of jurisdiction over an indispensible party.[3] Rule 19(b), Fed.R.Civ. Pro.

■ As to declaratory relief the situation presented is somewhat different. The declaratory relief sought is a declaration of the rights of the union members under their constitution. This particular relief does not affect NECA and its joinder is irrelevant. Additionally, the denial of injunctive relief does not necessarily preclude the granting of declaratory relief. 6A *Moore's Federal Practice,* ¶ 57.08[2], p. 57–40. The court concludes that in the present case the decla-

---

**3.** The court notes parenthetically that even with proper parties joined this claim would not be substantively well taken on the constitutional issue. *See* pgs. 861 to 862, *infra.*

ration of rights sought will serve a suffi-
ciently useful purpose in clarifying the legal
relations in issue and that declaratory relief
is proper.[4] 6A *Moore's Federal Practice*,
¶ 57.08[2], p. 57–38. The precise substan-
tive issue presented is whether the interna-
tional president had the power under the
constitution to approve the NECA–IBEW
contract without member ratification.[5]
Prior to considering this issue, however, the
court must consider the § 501(a) jurisdic-
tional issue.

■ As previously developed the Ninth
Circuit has not passed on the issue of the
scope of § 501(a) jurisdiction. *Kerr v.
Shanks*, 466 F.2d 1271, 1275 n. 2 (9th Cir.
1972). There is a split among the various
circuits on the issue of whether § 501(a)
fiduciary duties relate only to financial and
property matters or whether the section
imposes broader liability. The split and the
rationale supporting each view are amply
discussed in *Pignotti v. Local # 3 Sheet
Metal Workers Int. Ass'n.*, 477 F.2d 825,
832–35 (8th Cir. 1973). Without reiterating
the arguments set forth therein the court
concludes that the more liberal interpreta-
tion of § 501(a) is the proper reading of that
section, *Pignotti, supra*, at 835, and that a
valid claim is stated against the union offi-
cials. *Pignotti, supra; Phillips v. Osborne*,
403 F.2d 826, 832 (9th Cir. 1968).

## II. Merits of Contract Claim

The substance of the claim is that in
entering into the NECA–IBEW contract
without member ratification the interna-
tional president exceeded the scope of his
authority under the union's constitution and
thus breached his § 501(a) fiduciary duty.
The claim that the locals should be allowed
to vote on this contract is based on Article
IV, Section 3(13) of the union's constitution
which states:

Sec. 3. The I. P. is empowered as
follows:

\* \* \* \* \* \*

---

4. The court notes that the issue of the propriety
 of declaratory relief was not briefed by the
 parties.

5. The issue of the meaning of the convention
 term "negotiate" is not considered as it is an

(13) The I. P. or his representatives
shall not enter into agreements affecting
wages, hours and conditions of employ-
ment where local union agreement, cover-
ing such employment already exists,
without first notifying at least thirty (30)
days in advance of such agreements, the
local union so concerned or affected, in a
district, and then only by procuring con-
sent of a majority of the local unions in
the district or the individual local union
affected by this agreement.

It is apparently undisputed that there is a
local agreement covering the issue with
which this new agreement is concerned. It
is a reasonable construction of the section
just quoted to conclude that in these cir-
cumstances the local union should be given
the right to vote on the new agreement.

In response to this argument the union
points to Article IV, Section 3(12) of the
constitution which states:

Sec. 3. The I. P. is empowered as fol-
lows:

\* \* \* \* \* \*

(12) To enter into, or authorize an I. V. P.
representative, or assistant to enter into,
agreements with any national or interna-
tional labor organization or association of
employers, or with any company, corpora-
tion or firm doing an inter-state or inter-
provincial business in electrical work, to
cover the entire jurisdiction of the I.B.
E.W.

It is the defendants' contention that this
is the pertinent section in the present dis-
pute. According to its interpretation of the
constitution when an agreement which af-
fects the entire jurisdiction of the IBEW is
entered into it does not require section 3(13)
approval. It maintains that NECA is a
national association of employers and that
this agreement covers the entire jurisdic-

---

issue that is not likely to reoccur in a similar
context and no purpose would be served by
considering it here. 6A *Moore's Federal Prac-
tice*, ¶ 58.08[2], p. 57–38.

tion of the IBEW which has contact with this national association. It maintains that section 3(13) is only called into play when fewer than all the locals are affected by the agreement.[6] For this proposition it points to the phrases "in a district" and "individual local union affected," contained in section 3(13).

 If this court were construing this contract *de novo* the position of plaintiffs would have substantial merit. Such is not the court's function, however. It is well established that great deference is paid to a union's own construction of its constitution and a reasonable construction will be upheld. *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971). In this instance the union's construction is reasonable. The broad power of the international president under section 3(12) has been noted by other courts. *Parks v. IBEW*, 314 F.2d 886, 893, 908 (4th Cir. 1965). It is of no consequence that the NECA–IBEW agreement does not affect Canadian locals. Section 3(12) refers to "*national or* international . . . associations of employers . . . to cover the entire jurisdiction of the I.B.E.W." (Emphasis added). It thus appears contemplated within the express terms of the section that an agreement with a national organization covering the entire jurisdiction of the IBEW affected by that national organization could be executed by the international president without member approval. Hence, the defendants prevail on this issue.

### III. Discipline Claims

 A portion of the complaint filed seeks to remedy discipline imposed upon individual plaintiffs allegedly because of activities protected under the free speech sections of the LMRDA. During the course of the litigation, however, these charges were dismissed and any future harm is mere speculation. Accordingly these claims must be dismissed as moot. As to the issue of attorney's fees there has been no evidence to support such an award under the rationale of *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

### IV. Failure to Inform

 Plaintiffs assert in a final claim that defendants have breached their duty imposed by § 105 of the LMRDA, 29 U.S.C.A § 415, to inform the members of their rights under the LMRDA. This claim, however, has not been presented to the union and must be dismissed for failure to exhaust intra-union remedies. *Wiglesworth v. Teamsters Local Union No. 592*, 552 F.2d 1027 (4th Cir. 1976); Cf. *Broomer v. Schultz*, 239 F.Supp. 699, 705 (E.D.Penn. 1965), aff'd per curiam, 3 Cir., 356 F.2d 984.

### V. Amendment

Plaintiffs have moved to amend their complaint. A review of the pleadings and memoranda indicates that this is little more than a technical amendment that will not prejudice any party and the motion is well taken.

### CONCLUSION

In conclusion the court summarizes the rulings on the motions for summary judgment. The claims under § 301 of the Labor-Management Relations Act must be dismissed for lack of jurisdiction. The claim asserted under § 101 of the Labor Management Reporting and Disclosure Act must be dismissed for failure to state a claim upon which relief can be granted. The claim for injunctive relief under § 501 of the LMRDA must be dismissed because of the inability and unwillingness to join an indispensible party. The claim for declaratory relief under that section is denied on the merits. The claim of improper discipline is dismissed as being moot and finally the claim of failure to inform is dismissed for failure to exhaust intra-union remedies.

Accordingly IT IS ORDERED:

1. THAT plaintiffs' motion for summary judgment is denied. This cause is dismissed

---

**6.** Of course agreements with small intrastate employers are excluded by the wording of section 3(12).

in part and summary judgment is granted to defendants in part in conformity with this memorandum.

2. THAT plaintiffs' motion to file an amended complaint is granted. The second amended complaint may be filed by the clerk and a judgment in conformity with this memorandum entered thereon.