Mack O'Neal ALEXANDER and William L. Caldwell, Plaintiffs-Appellants,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, etc. et al., Defendants-Appellees.

No. 77–3356.

United States Court of Appeals, Fifth Circuit.

Aug. 25, 1980.

Stephen J. Katz, Bastrop, La., George M. Strickler, Jr., New Orleans, La., for plaintiffs-appellants.

Jerry L. Gardner, New Orleans, La., for Local 406.

Dennis M. Angelico, New Orleans, La., for International Union of Operating Engineers.

Before CHARLES CLARK, RONEY and HENDERSON, Circuit Judges.

RONEY, Circuit Judge:

A local union's business agent, apparently on direction from the international union's president, signed a binding project agreement on behalf of the local, even though the local's membership had unanimously declined on two prior occasions to participate in the project, and despite the presence of a provision in the parent union's constitution that collective bargaining agreements must be approved by a majority of the affected local. The issue in this case is whether the respective unions' actions created causes of action on behalf of two individual local members against the local and international under section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185; sections 101(a)(1) and 102 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C.A. §§ 411(a)(1), 412, or the respective unions' duty of fair representation.

The district court denied all relief except as against the local under its duty of fair representation, but awarded only nominal damages in favor of the two complaining local members. We reverse the district court's denial of a fair representation claim against the parent union, remand the case for an award of nominal damages and costs under this cause of action, and affirm in all other respects.

Local 406 of the International Union of Operating Engineers, AFL–CIO (the local), is the exclusive bargaining representative of persons who operate and maintain all equipment covered by the engineer's craft agreement between the Northeast Louisiana Chapter of the Associated General Contractors of America and the Building and Construction Trades Council, of which the local was a member. The dispute here arose out of the signing of a project agreement between Redrock Construction Co. and the Trades Council for the expansion of a manufacturing facility. Redrock was not a party to the craft agreement between the Trades Council and the contractors association. Consequently, a separate agreement covering this particular job was necessary. The Redrock project agreement, however, contained special standards that were less favorable to the employees than the same standards contained in the engineers craft agreement. Although the two agreements contained the same wage rates and fringe benefit contributions, the Redrock agreement granted time and one-half rates for overtime, while the craft agreement contained double rates for overtime work. In addition, under the proposed Redrock agreement, operating engineers could be shifted among various pieces of equipment throughout the working day, while under the craft agreement, only one such move could be ordered during the course of a day. The local membership, on June 22, 1976, and again on July 6, 1976, unanimously rejected the proposed project agreement.

On July 14, 1976, the local's business manager received a telegram from the president of the International Union of Operating Engineers, AFL–CIO (the international), ordering the business manager to sign the Redrock project agreement. The full text of the telegram was as follows:

> This office has been informed that all crafts except operating engineers have signed the project agreement with Red Rock Construction Company at Olinkraft Paper Company, Monroe, Louisiana. You are hereby directed to sign the agreement and to supply men to this job.

On July 15, the business manager signed the agreement on behalf of the local.

The international's constitution, incorporated in pertinent part into Article V of the local's by-laws, provided that proposed collective bargaining agreements "shall not be executed until they have been presented at the next membership meeting following the negotiation of the proposed agreement and have been approved by the membership." There was an additional proviso permitting the local membership to delegate this authority, but the district court found that neither the local nor the international claimed that such delegation had been made. That finding is not challenged on appeal.

Two local members who never worked under the project agreement involved in this dispute seek an award of $50,000 compensatory and exemplary damages. Their request that the business manager's assent to the project agreement be voided was rendered moot upon completion of the Redrock job.

### Section 301: Labor Management Relations Act

Plaintiff employees sought to invoke the district court's jurisdiction first based upon section 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a). That section provides,

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to

the amount in controversy or without regard to the citizenship of the parties. Plaintiffs contended that violation by the respective unions of the international's constitution amounted to a breach of contract under the purview of section 301(a). Section 301 "expressly requires a violation of a labor contract before it may be employed as a jurisdiction device." *Mumford v. Glover*, 503 F.2d 878, 882 (5th Cir. 1974). The issue of whether individual union members may use section 301 as a jurisdictional basis to sue their local or international unions is a matter of first impression in this Circuit.

As the language in section 301 makes clear, jurisdiction depends on whether there is a contract between an employer and a labor organization or between two labor organizations. While the *suit* need not necessarily be between an employer and a labor organization or between labor organizations, *Smith v. Evening News Association*, 371 U.S. 195, 200–201, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962), the *contract* upon which the suit is based must be between such parties. *See Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).

In *Retail Clerks International Association, Locals 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962), it was contended that the contract necessary for section 301 jurisdiction must be a collective bargaining agreement. The Court rejected that approach, stating, "It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Id.*, at 28, 82 S.Ct. at 548.

Other circuits confronted by the issue of whether violation of the union constitution provides a basis for section 301 jurisdiction have derived from the *Lion Dry Goods* language, and from their conclusion that the purpose of the LMRA is not to regulate strictly intraunion affairs, the requirement that for an agreement to be a "contract" within the meaning of section 301, it must have some effect on external labor-employer relationships. Thus, several cases have found that section 301 did not confer jurisdiction because the dispute was merely an intraunion matter and did not involve a threat to industrial peace. *See, e. g., Stelling v. IBEW Local 1547*, 587 F.2d 1379, 1382–84 (9th Cir. 1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *Trail v. International Brotherhood of Teamsters*, 542 F.2d 961, 966–68 (6th Cir. 1976); *1199 DC, National Union of Hospital & Health Care Employees v. National Union of Hospital & Health Care Employees*, 533 F.2d 1205, 1207–08 (D.C.Cir. 1976); *Smith v. UMW*, 493 F.2d 1241, 1242–44 (10th Cir. 1974); *Hotel & Restaurant Employees Local 400 v. Svacek*, 431 F.2d 705, 706 (9th Cir. 1970). Other cases have reached the apparently contradictory conclusion that there was section 301 jurisdiction, but in these cases the courts found that a genuine impact on industrial peace had been adequately alleged. *See, e. g., Abrams v. Carrier Corp.*, 434 F.2d 1234, 1247–49 (2d Cir. 1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *Parks v. IBEW*, 314 F.2d 886, 914–17 (4th Cir.), *cert. denied*, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); *cf. Local 657, United Brotherhood of Carpenters & Joiners v. Sidell*, 552 F.2d 1250, 1252–56 (7th Cir.) (suit by local against parent union under section 301(a) alleging violation of parent union's constitution), *cert. denied*, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977); *Local 1219, United Brotherhood of Carpenters & Joiners v. United Brotherhood of Carpenters & Joiners*, 493 F.2d 93, 95–96 (1st Cir. 1974) (same).

So, while those other circuits have reached different results in cases involving jurisdiction based on parent union constitutions, the conflict is only one of result and not one of the method of analysis. We follow the decisions cited above and hold that for purposes of conferring jurisdiction under section 301, the alleged violation must create a threat to industrial peace or have a significant impact upon labor-employer relations. It is therefore necessary to determine whether the present controversy meets that requirement.

The complaining employees here argue the consequences of the respective unions' activities had a substantial impact on labor-management relations, since without a contract, no operating engineers would have been sent to the job. Had the construction company been forced to secure nonunion replacements for the balking local members, it is likely the other unions, who had already assented to the Redrock project agreement, would have walked off the job. Furthermore, the employees argue, since the essence of the dispute here arose from the employer's refusal to agree to the double time overtime rate which had been incorporated into the engineers' craft agreement, labor-management relations are directly implicated. Had Redrock not attempted to undercut the craft agreement in the overtime area, a key element of the dispute would have been diffused, according to plaintiffs.

Plaintiffs' contentions must be rejected. Their arguments that the consequences of the respective unions' acts had a substantial impact upon labor-management relations are misdirected. This line of reasoning would include virtually every union agreement within the ambit of section 301, since ultimately practically all union activity will have some impact in the labor-management arena. The question is not whether the union activities have sufficient impact on industrial peace and employer relationships but whether the agreement and its alleged violation have that effect. The agreement allegedly violated here was the international's constitution, not the craft agreement, which did not even apply to the Redrock job, or the other unions' contracts. The alleged violation was not the signing of a contract inconsistent with the craft agreement but rather the signing of a contract not approved by the procedures prescribed by the international's constitution. With respect to that agreement and that alleged violation, plaintiffs have not shown there was any real threat to industrial peace or any significant impact on the relationship with the employer, nor is there any indication in the record that, aside from mere speculation, such a showing could be made.

The business agent, by signing the agreement without authorization, sparked a dispute solely between the employees and their respective unions. There has been no suggestion that Redrock, or any of the unions that had already agreed to commence work on the Olinkraft job, in any way prompted the international's president to urge ratification of the agreement. We do not decide whether such a scenario would have been sufficient to bring the matter within the context of collective bargaining, and out of the realm of a strictly intraunion squabble.

■ We conclude the present controversy does not have a significant impact on external labor-employer relationships and therefore cannot form the basis of jurisdiction under section 301. The district court properly denied jurisdiction under that section.

*Sections 101 and 102: Labor Management Reporting and Disclosure Act*

The next question is whether plaintiffs have alleged a sufficient violation of section 101(a)(1) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C.A. § 411(a)(1), to confer jurisdiction under section 102 of the Act, 29 U.S.C.A. § 412. Section 101(a)(1) provides,

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

Plaintiffs claim their equal rights to vote were denied by virtue of the business agent's patent disregard of the two referenda in which the proposed project agreement had been unanimously rejected. The word "referendum" in section 101(a)(1) has been held to be sufficiently broad "to guarantee to all union members a right to vote on a union contract which any of them enjoy." *Trail v. International Brotherhood of Teamsters*, 542 F.2d at 966.

The Supreme Court held in *Calhoon v. Harvey*, 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964), however that the guarantee of "equal rights" in section 101(a)(1) forbids only unequal treatment as between members of a union. Thus, the issue under section 101(a)(1) is not whether the members were treated properly or fairly, but whether they were treated equally. *See Lux v. Blackman*, 546 F.2d 713, 716 (7th Cir. 1976); *Case v. IBEW Local 1547*, 438 F.Supp. 856, 859 (D.Alas.1977), *aff'd sub nom. Stelling v. IBEW Local 1547*, 587 F.2d 1379 (9th Cir. 1978), *cert. denied*, 442 U.S. 944, 61 L.Ed.2d 315, 99 S.Ct. 2890 (1979); *Aikens v. Abel*, 373 F.Supp. 425, 434 (W.D. Pa.1974).

■ There is no allegation here that the two complaining union members have been discriminated against, or that they have been denied a privilege or right to vote that the union has granted to others. It is undisputed that the local members voted unanimously to reject the proposed Redrock project agreement. If there was a denial of a right to vote, because of the business agent's abrogation of the members' wishes, that denial affected each member equally. Plaintiffs themselves were not singled out for disparate treatment, nor is there any hint that other union members received better treatment in exercising their union franchise. Nothing in section 101(a)(1) requires a labor union to submit proposed agreements to the membership for prior ratification. *See Confederated Independent Unions v. Rockwell-Standard Co.*, 465 F.2d 1137, 1140 (3d Cir. 1972); *Cleveland Orchestra Committee v. Cleveland Federation of Musicians, Local 4*, 303 F.2d 229, 232–33 (6th Cir. 1962). " '[T]here was no unequal treatment with respect to a right to vote and the fact that the vote was not translated into action consistent therewith does not in and of itself give a cause of action to the plaintiffs against the International, and Local Union.' " *Vincent v. IBEW*, 622 F.2d 140, 143 (5th Cir. 1980). Plaintiffs have not stated a cause of action under section 101(a)(1).

### Fair Representation: Local

■ The district court concluded that plaintiff employees had stated a cause of action against the local under its duty of fair representation and awarded nominal damages thereunder of $1 for each plaintiff. The district court's finding that plaintiffs are unable to show any compensable damages has not been appealed. The district court properly held the local breached its duty of fair representation under these facts. We affirm the award of nominal damages and costs against the local.

The district court also held that plaintiffs were not entitled to punitive damages under the local's breach of its duty of fair representation. After the district court rendered its decision, but before oral argument in this case, the Supreme Court held improper an award of punitive damages for a union's breach of duty of fair representation in processing an employee's grievance. *IBEW v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). Although *Foust* involved a claim under the Railway Labor Act, the decision is equally applicable to a case like the present one arising under the National Labor Relations Act. *See* 442 U.S. at 46 n.8, 99 S.Ct. at 2125 n.8; *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Accordingly, the district court's denial of punitive damages is affirmed.

### Fair Representation: International

The district court held that the international owed no duty of fair representation to the employees, and granted the international's motion for summary judgment. We reverse that portion of the district court's holding.

In return for the broad authority granted a union as the members' exclusive collective bargaining agent, the union must "serve the interests of all members without hostility or discrimination toward any, . . . exercise its discretion with complete good faith and honesty, and . . . avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842

(1967) (citing *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964)). The union's duty is violated "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. at 916. *See also Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1125 (5th Cir. 1980); *Cox v. C. H. Masland & Sons, Inc.*, 607 F.2d 138, 142 (5th Cir. 1979).

After concluding that the local had breached its duty of fair representation to plaintiffs (a finding the local has not appealed), the district court considered the international's liability:

> Although defendant International would appear to be equally at fault—having exceeded its own authority in ordering the signing of the contract—plaintiff has not asserted and the Court is unable to find any federally cognizable cause of action. Not being an exclusive bargaining agent, the International owes no duty of fair representation. . . .

(citations omitted). Even though the international was not the employees' exclusive bargaining agent, the question is whether the international nevertheless owed a duty to the local's membership not to cause the local to breach its duty of fair representation. With respect to the local, the district court noted, "The facts of this case present a paradigm breach of this duty" of fair representation.

While the international was not formally designated the employees' bargaining agent, the international president's directive had the effect of supplanting the authority vested in the local's business manager to assent to agreements on the membership's behalf. In other contexts, international unions have been held liable for the acts of a local in negotiating collective bargaining agreements, when the resulting agreement violated local members' rights. *See, e. g., Myers v. Gilman Paper Corp.*, 544 F.2d 837 (5th Cir.), *modified on rehearing*, 556 F.2d 758, *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); *Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721 (5th Cir. 1976).

Furthermore, Article VI of the international's constitution formally invests in the international's president supervisory powers over the various locals and their agents. The president was presumably acting under this power when he sent the telegram reading, "You are hereby directed to sign the agreement and to supply men to the job." The district court found that the local's business agent signed the agreement at the direction of the international. The court also determined that the international was equally at fault with the local in the local's breach of its duty of fair representation. On the basis of these holdings, we conclude that the international caused the business manager to sign the Redrock agreement and is therefore liable to the local's membership. We remand to the district court with directions to award nominal damages and costs against the international.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

CHARLES CLARK, Circuit Judge, concurring in part and dissenting in part:

I concur in all Judge Roney writes except the fourth and final paragraph under the heading "Sections 101 and 102: Labor Management Reporting and Disclosure Act." Plaintiffs asserted that the international president treated the members of their local union unequally vis-a-vis the members of the other locals by directing its business manager to sign a contract rejected by the membership of the local union. The claim was made that this discrimination was not practiced against other locals which rejected contracts and that it created the inequality which violated section 101(a)(1). In the absence of proof to the contrary, I would find that plaintiffs have stated a cause of action under this section.