**William S. RUTLEDGE,
Plaintiff-Appellant,**

v.

**ALUMINUM, BRICK AND CLAY WORKERS INTERNATIONAL UNION; Lawrence A. Holley, President of the Aluminum, Brick and Clay Workers International Union, Defendants-Appellees.**

No. 83–7301.

United States Court of Appeals,
Eleventh Circuit.

July 30, 1984.

George C. Longshore, Birmingham, Ala., for plaintiff-appellant.

John C. Falkenberry, Birmingham, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and THORNBERRY *, Senior Circuit Judge.

THORNBERRY, Senior Circuit Judge:

William Rutledge brought this suit for wrongful discharge pursuant to the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 412 (LMRDA) after he was fired from his position as regional director for the Aluminum, Brick and Clay Workers International Union for allegedly political reasons. Rutledge claims that his discharge also violated the International Union's constitution. The district court granted summary judgment for defendants on the grounds that the LMRDA does not prohibit the discharge of a union employee for political reasons. We affirm the district court's grant of summary judgment for claims brought pursuant to the LMRDA, but we reverse and remand the wrongful discharge claim based on the union constitution.

The facts of this case were described in an earlier Eleventh Circuit opinion affirming the district court's denial of Rutledge's request for preliminary injunctive relief:

Rutledge was a regional director of the Southeastern states for the union. He attended a union convention in 1981 as a delegate from his local and during the convention campaigned actively for a presidential candidate who lost the elec-

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

tion. The winner, appellee Holley, soon transferred Rutledge from his region to serve as regional director for the west coast. Rutledge alleges that Holley knew that his [Rutledge's] life had been threatened by union members in Los Angeles previously. Rutledge refused the transfer and began picketing the union offices. Holley withdrew the transfer and fired him.

Appellant claimed that appellees violated 29 U.S.C. §§ 411(a)(1) and (2), which guarantee union members the right to freely participate in elections and to express their views about candidates and union business, by transferring and then firing him. He also alleged that the union violated 29 U.S.C. § 411(a)(5) by discharging him without notice of the charges and a hearing. Finally, he contended that he was terminated without "just cause" as required by the union's constitution. Rutledge asked for declaratory, equitable and injunctive relief and compensatory and punitive damages. After a hearing, the district court denied the request for injunctive relief on the ground that he had not established a likelihood of success on the merits, relying in part upon *Wambles v. Teamsters*, 488 F.2d 888 (5th Cir.1974).

*Rutledge v. Aluminum, Brick and Clay Workers, Etc.*, 681 F.2d 1352, 1353–54 (11th Cir.1982).

This circuit found that the district court did not abuse its discretion in denying injunctive relief, especially in light of the Supreme Court case, *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), which held that a union leader is not precluded under the LMRDA from discharging a union official for political reasons so long as that official's status as a union member is not affected. After the appeal on the injunctive relief issue was completed, the district court granted summary judgment for defendants. In viewing the facts most favorably to the plaintiff, the district court assumed that Rutledge's reassignment to the West Coast was politically motivated and that the reassignment amounted to a constructive discharge. The

court held that under *Finnegan*, the defendants were entitled to judgment as a matter of law. In this appeal from summary judgment, Rutledge argues that *Finnegan* does not control this case, and that the existence of genuine issues of material facts should preclude summary judgment.

## I. *What is a Policymaker?*

In *Finnegan v. Leu*, several business agents of a union local had opposed the election of the successful union presidential candidate. After taking office, the new president discharged these officials, but this action did not affect their membership status. The Supreme Court found that the LMRDA did not protect these union officials from such action because the Act was intended to preserve union democratic processes by protecting the rights of individual union members; it was not intended to provide job security for union employees. The Court reasoned that a union president should be free to employ only those staff members that agree with his policies. The Court, however, expressly left open the question of whether a union leader could discharge nonpolicy-making or nonconfidential employees for political reasons. 102 S.Ct. at 1873 n. 11.

Rutledge argues that *Finnegan* does not control this case because, as regional director, he was not in a policymaking position. He claims that union policy is formulated by the union executive board, of which he was not a member. The language in *Finnegan*, however, suggests that its holding is not limited to individuals who actually set out formal policy. The Court uses the terms "administrators" and "staff" to describe the type of officials whose jobs are not protected by the LMRDA. We therefore think that *Finnegan* applies to union employees who are instrumental in implementing union policy, as well as those officials who formulate policy. Other circuits have construed *Finnegan* in this manner, and have applied that case to a union benefits representative, *Cehaich v. International Union, U.A.W.*, 710 F.2d 234 (6th Cir.1983), to a

business representative, *Childs v. Local 18, International Brotherhood of Electrical Workers*, 719 F.2d 1379 (9th Cir.1983), and to a financial secretary, *Mandaglio v. United Brotherhood of Carpenters and Joiners of America*, 575 F.Supp. 646 (E.D. N.Y.1983). *See also Hodge v. Drivers, Salesmen, Etc. Local Union 695*, 707 F.2d 961 (7th Cir.1983) (Holding that a clerical worker was a confidential employee and therefore subject to the holding in *Finnegan*, the court stated, *"Finnegan* by its very terms is not limited to powerful decisionmakers but includes 'administrators' and 'staff.' ").

Rutledge headed the regional office for the southeastern area of the United States, and serviced local unions by arbitrating cases and negotiating contracts. His position was unquestionably instrumental in implementing union policy. Rutledge's argument that his situation is distinguishable from *Finnegan* on this ground is without merit.

## II. *Appellant's Rights as a Union Member Were Not Affected*

■ Rutledge also argues that *Finnegan* does not control this case because his discharge affected his status as a union member. *Finnegan* holds that, although certain union employees' jobs are not protected by the LMRDA, an employee's status as a union member is protected under the Act. The LMRDA does not prohibit a union leader from firing a union employee for political reasons, but the discharge cannot affect an individual's rights as a union member.

Rutledge claims that when he lost his job with the union he was no longer entitled to be a member of the union. The union constitution states, "Any person ... who is employed in any trade or occupation [including employees of the union] which the International Union seeks to organize shall be eligible for membership in this International Union...." Article III, Constitution and By-Laws of the Aluminum Workers International Union (Amended 1979). Because Rutledge is no longer "employed in [the] trade," he argues that according to the union constitution he is not eligible for union membership and therefore *Finnegan* is inapposite.[1] This argument must fail because, as pointed out by appellees, Rutledge's rights as a union member were not affected by his discharge. Moreover, the undisputed facts show that Rutledge has never been barred from exercising his rights as a union member. The only evidence indicating that Rutledge's rights as a union member were jeopardized by his discharge was a telephone conversation in which union president Holley stated that Rutledge was no longer eligible for union membership. This statement is of no consequence because after it was made Rutledge continued to exercise his rights as a member, including running for vice president of a union local.

Rutledge also argues that his membership status was somehow affected by the fact that he chose to begin receiving pension benefits. He argues that he was "forced" to retire, and that members who are forced to retire are not permitted to vote in union meetings. Rutledge relies on Article XXXIII, General, § 9, of the union's constitution, which provides that a member who is forced to retire because of age or permanent disability may be issued an Honorary Certificate of Life Time Membership. This certificate permits the retired member to attend union meetings, but he is not entitled to voice or vote in such meetings. The district court correctly found that this provision was inapplicable on its face to Rutledge, because Rutledge was not forced to retire; he voluntarily requested his pension benefits.[2] Rutledge's rights as a un-

---

1. Rutledge's construction of the union constitution is questionable. Although the constitution requires that an individual be employed in the trade to become a member, it does not state that an individual loses membership status if he or she loses a job.

2. Rutledge argues that a discharge at age 54 amounts to a forced retirement in view of the fact that he is too old to return to the trade. We agree with the district court that this construction of the phrase "forced to retire" is incorrect.

ion member were not affected by his discharge from his position as regional director. This case is therefore controlled by the holding in *Finnegan,* and summary judgment was properly granted to defendants on all claims brought pursuant to the LMRDA.

### III. *Union Constitution Claim*

■ In addition to his LMRDA claims, Rutledge's complaint alleges that his discharge violated the terms of the union constitution. This issue was not specifically addressed in the district court memorandum granting summary judgment for defendants. The union constitution states, "The President may remove or suspend any such employee for just cause." Although the district court noted that Rutledge's actions of picketing and refusing to report to work amounted to insubordination for which the union could lawfully discharge him under the LMRDA, it does not state whether the actions provided "just cause" for discharge under the union constitution. Rutledge correctly characterizes this issue as a contractual one which should be addressed separately from claims brought under the LMRDA. Rutledge argues that because his acts of insubordination were deliberately provoked, they cannot alone establish "just cause" under the union constitution. The record does not contain sufficient evidence for this court to hold that defendants were entitled to judgment as a matter of law on this claim. We must therefore remand this claim to the district court.[3]

A question of federal jurisdiction is raised by our affirmance of summary judgment as to the federal statutory claims and our remand of the union constitution claim.

A claim that a union has violated its constitution is characterized as a breach of contract action, and has been considered to be outside the scope of federal jurisdiction. *See Sullivan v. Laborers' International Union of North America,* 707 F.2d 347, 349 (8th Cir.1983); *see also Cehaich v. International Union, U.A.W.,* 710 F.2d 234, 240 (6th Cir.1983). Rutledge, however, argues that federal jurisdiction can be invoked under section 301(a) of the Labor Management Relations Act (the Taft-Hartley Act). That section provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or *between any such labor organizations.*" 29 U.S.C. § 185(a) (emphasis added). The Supreme Court has held that a union constitution is a "contract" within the meaning of § 185(a), and that this section provides jurisdiction for suits brought by a local union against its parent international union which alleges a violation of the international's constitution. *United Association of Journeymen, Etc. v. Local 334, Etc.,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981). The Court in *Journeymen,* however, expressly left open the question of whether an individual union member could sue a union under § 185(a) for a violation of the union constitution. 101 S.Ct. at 2553 n. 16. By leaving this question unanswered, the Court declined to resolve an existing conflict among the circuits on this issue.[4]

Prior to *Journeymen,* the rule in this circuit[5] was that "for purposes of conferring jurisdiction under section 301 [29 U.S.C. § 185(a) ], the alleged violation must

---

3. Because we remand this issue to the district court, we do not address defendants' argument that the "just cause" provision is not applicable to regional directors.

4. To illustrate the split in the circuits on this issue, the Court in *Journeymen* included the following citation at 101 S.Ct. 2553 n. 16: "See generally *Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Compare *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1247 (CA2 1970), cert. denied *sub nom. Steel-*

*workers v. Abrams,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), with *Trail v. International Brotherhood of Teamsters,* 542 F.2d 961, 968 (CA6 1976)."

5. The Eleventh Circuit has adopted Fifth Circuit decisions prior to October 1, 1981 as binding precedent for the Eleventh Circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206 (11th Cir.1981).

create a threat to industrial peace or have a significant impact upon labor-employer relations." *Alexander v. International Union of Operating Engineers, AFL–CIO, Etc.,* 624 F.2d 1235 (5th Cir.1980). The decision in *Journeymen,* however, could have an effect on this rule because *Journeymen* eliminated any requirement that a labor organization show a significant impact on the labor-management relations before triggering jurisdiction under § 185(a). 101 S.Ct. at 2552. The Ninth Circuit has construed *Journeymen* as rejecting the significant impact requirement in all contexts, including suits brought by individual members based on violations of the union constitution. *Kinney v. International Brotherhood of Electrical Workers,* 669 F.2d 1222 (9th Cir.1981). District courts in post-*Journeymen* decisions in the Eighth and Sixth Circuits have reached opposite conclusions as to whether an individual could sue a union under § 185(a). *See Alford v. National Post Office Mail Handlers,* 576 F.Supp. 278, 282–85 (E.D.Mo. 1983) ("There is no special prerequisite such as satisfying the significant impact requirement for suits for violations of union constitutions by union members."); *Frenza v. Sheet Metal Workers' International Association,* 567 F.Supp. 580, 585 (E.D.Mich.1983) ("Because the Supreme Court refused to overrule the decision of the Sixth Circuit in [*Trail v. International Brotherhood of Teamsters,* 542 F.2d 961 (6th Cir.1976)] wherein the Court of Appeals held that individual union members

could not maintain an action for breach of a union constitution, this court continues to be bound by that decision.").

■ The posture of the present case makes unnecessary a decision by this court as to whether *Journeymen* affected the significant impact requirement established in *Alexander.*[6] Even if the union constitution claim were to be characterized as a state cause of action, the district court is empowered to exercise pendent jurisdiction over this claim. Although federal courts have been encouraged to dismiss pendent state claims if all federal claims are resolved before trial,[7] the decision to retain jurisdiction over a remaining state claim is within the discretion of the district court. *See In Re Carter,* 618 F.2d 1093 (5th Cir. 1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). At this point we cannot say whether the district court will refuse to retain jurisdiction over this claim.[8] The union constitution claim is therefore remanded to the district court.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART, with 50% of costs assessed against appellant and 50% assessed against appellees.

---

**6.** It is not clear whether Rutledge's claim can meet the "significant impact" test. Although it appears to be a strictly intra-union dispute, at least one district court was of the opinion that "the removal of union officers in violation of the Local Constitution arguably goes to the heart of external labor-management relations, because union officers are the representatives of labor in its relations with management. This type of dispute can hardly be characterized as strictly intra-union." *Alford v. National Post Office Mail Handlers,* 576 F.Supp. 278 (E.D.Mo. 1983).

**7.** If the applicable state limitations period has run, however, the district court is encouraged to retain pendent jurisdiction over this claim. *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33

(11th Cir.1982); *Henson v. Columbus Bank and Trust Company,* 651 F.2d 320, 325 (5th Cir. 1981).

**8.** We realize that the district court could dismiss this claim as a pendent state claim and choose to apply the significant impact test set forth in *Alexander* to determine whether independent federal jurisdiction is available under § 185(a). If Rutledge fails to meet this requirement, we could be faced with yet another appeal of this case. However, because the issue of the effect of *Journeymen* on the significant impact test established in *Alexander* was not raised in the district court, and because appellees did not address this issue on appeal, we do not think resolution of this potentially important issue is proper at this juncture of the litigation.