542 F.2d 961
 93 L.R.R.M. (BNA) 3076, 79 Lab.Cas. P 11,689
 John W. TRAIL et al., Plaintiffs-Appellees, Cross-Appellants,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, a voluntary
unincorporated association, et al.,
Defendants-Appellants, Cross-Appellees.
 Nos. 75-1193, 75-2074.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 5, 1976.
Decided Oct. 15, 1976.
 
 Harvey I. Wax, Levin, Levin, Garvett & Dill, Detroit, Mich., for appellants in No. 75-2074 and appellees in No. 75-1193.
 Walter F. Kelly, Goldberg, Previant & Uelmen, Milwaukee, Wis., John W. Ester, Terrance K. Jolly, Matheson, Bieneman, Parr, Schuler & Ewald, Bloomfield Hills, Mich., Hoffa, Chodak & Robiner, James P. Hoffa, Detroit, Mich., for appellees in No. 75-2074 and appellants in No. 75-1193.
 Before EDWARDS, McCREE and MILLER*, Circuit Judges.
 EDWARDS, Circuit Judge.
 
 
 1
 These are interlocutory appeals taken by both plaintiffs (ten individual members of ten different teamster union locals) and defendants (International Brotherhood of Teamsters and ten of its Michigan local unions) from an order by the District Judge granting in part and denying in part defendants' (unions) motion to dismiss the complaint. This court granted leave to defendants to take this interlocutory appeal and denied defendants' motion to dismiss cross appeals by plaintiffs after the District Judge had (as we read her order) certified the appellate issues sought to be presented by both sides as controlling questions of law under 28 U.S.C. § 1292(b) (1970).
 
 
 2
 This is a class action filed on behalf of plaintiffs and all other union members similarly situated seeking damages and injunctive relief. They assert that their cause of action against defendants (unions) is based upon Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1970), to remedy claimed unfair representation and breaches of contract (i. e., the International Union constitution) and upon Sections 101(a)(1) and 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411(a) (1), (a)(2) (1970), to remedy claimed violations of members' rights to vote and speak. The complaint also states a pendent state claim against defendants (unions).[1] Federal jurisdiction is based upon Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1970) and Section 102 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 412 (1970).
 
 
 3
 The facts as set out in plaintiffs' complaint and agreed upon by the parties before the District Judge are as follows:
 
 
 4
 Plaintiffs are "over-the-road" truck drivers who live in Michigan and who are employed by various Michigan trucking companies, all of which companies bargain collectively with defendant unions. The collective bargaining agreements which concern plaintiffs' employment for the period between April 1, 1970 and June 30, 1973 are the National Master Freight Agreement, which is negotiated on a nationwide basis by the defendant International Union on behalf of employees and a nationwide bargaining agent on behalf of trucking company employers; the Central States Agreement which is negotiated as a Supplement to the National Master Freight Agreement for the Central States Area; and the Michigan Rider, which is negotiated as a Rider to the Central States Agreement for the State of Michigan. The Michigan Rider is negotiated by the defendant local unions on behalf of Michigan trucking employees and by the defendant Employers' Association on behalf of Michigan trucking company employers. The effective dates of all the collective agreements are April 1, 1970 to June 30, 1973. During that period of time plaintiffs, and the entire class whom they purport to represent, have been compensated according to the provisions of the Michigan Rider. Yet the Michigan Rider has not, plaintiffs claim, been properly ratified by Michigan employees, according to the provisions of the International Union Constitution, which fact is and was at the time of execution of the Michigan Rider known to both the defendant unions and the defendant Employers' Association. The National Master Freight Agreement and the Central States Agreement have, however, been properly ratified. Moreover, plaintiffs' claim, compensation is greater under the Central States Agreement. Hence, had they been given their proper opportunity to ratify the Michigan Rider they would have declined to so do. And, plaintiffs claim, the defendant local unions surrendered the greater compensation under the Central States Agreement for the sole purpose of granting Michigan trucking company employers an economic benefit at the expense of the plaintiffs. And, plaintiffs claim, the Michigan trucking company employers knew not only that the Michigan Rider had to be ratified, but also that, if submitted for ratification, the Rider would have been defeated. Nevertheless, they willfully and purposely induced the defendant unions not to submit the Michigan Rider for ratification. Finally, plaintiffs claim, they have attempted to exhaust intra-union procedures for redress of their claims and have in fact exhausted contractual grievance mechanisms notwithstanding defendant unions' refusal on numerous occasions to act on their behalf in processing their grievances.
 
 
 5
 On defendants' (unions) motion to dismiss the complaint against them, the District Judge granted the motion as to both aspects of plaintiffs' § 301 claims as set out in Counts I and III. She also granted the motion to dismiss as it applied to plaintiffs' § 101(a)(2) claim.
 
 
 6
 The District Judge denied defendants' (unions) motion to dismiss a claim of breach of a right to vote based upon § 101(a)(1) and a state law cause of action as to which pendent jurisdiction is asserted.
 
 
 7
 We affirm her dismissal of plaintiffs' § 101(a)(2) claim and her dismissal of the breach of contract claim based on § 301. We also affirm her denial of defendants' (unions) motion to dismiss plaintiffs' § 101(a)(1) claim. We reverse the dismissal of plaintiffs' § 301 claim alleging unfair representation and remand the case for trial.
 
 Procedural Issue
 
 8
 Plaintiffs-appellants (members) did not seek this court's leave to take their cross appeals. On April 22, 1975, this court denied defendants' (unions) motion to dismiss plaintiffs' (members) cross appeals, which was based on this failure. No petition for rehearing or application for Writ of Certiorari was filed and the judgment became final. On April 7, 1976, defendants (unions) filed a similar motion to dismiss. The sole difference between the original motion and the present one is that defendants (unions) now cite as controlling a recent decision of the Supreme Court, Liberty Mutual Insurance Company v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). The Liberty Mutual case, however, does not in any way affect decision of a motion to dismiss interlocutory cross appeals. Further, the District Judge clearly intended to certify cross appellants' questions. She stated "that the issues determined by this Order involve controlling questions of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of this litigation." (See District Court Order of September 19, 1974, amending her Order of June 28, 1974.) (Emphasis added.) Defendants' (unions) motion to dismiss plaintiffs' (members) cross appeals is denied both in the interest of judicial economy[2] and because we view it as a motion for rehearing filed out of time. Fed.R.App.P. 49(a).
 
 
 9
 Breach of Right to Meet and Speak, § 101(a)(2) (Count II)
 
 Section 101(a)(2) provides:
 
 10
 Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 11
 The statutory language upon which defendants (members) would found this action simply does not support their claims. The complaint alleges no denial of the right to meet or the right to speak. The District Judge was clearly correct in dismissing this aspect of Count II.
 
 Right to Vote, § 101(a)(1) (Count II)
 
 12
 We believe the District Judge was correct likewise in refusing to dismiss plaintiffs' (members) claims based upon § 101(a)(1). That section states:
 
 
 13
 Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 14
 Plaintiffs (members) claim that the equal right to vote on referendums conveyed by this statute has been violated by defendants' (unions) failure to submit the Michigan Rider to the Michigan teamsters membership for ratification. They also claim that if it had been so submitted, the Rider would have been rejected, thus preventing the loss of wages which they assert has occurred.
 
 
 15
 Defendants (unions) claim that the word "referendums" should not be read to apply to the asserted right to vote on the Michigan Rider, that § 101(a)(1) does not protect the right to vote on the terms of a collective bargaining agreement, that plaintiffs (members) have not alleged a deprivation of the equal right to vote, and that plaintiffs have failed to exhaust remedies under the union constitution and are thus barred from maintaining this action.
 
 
 16
 The exhaustion issue we shall deal with below. The other arguments for reversal advanced by defendants (unions) do not appear to us to have merit at this stage of the proceeding.
 
 
 17
 We believe the word "referendum" is sufficiently broad to guarantee to all union members a right to vote on a union contract which any of them enjoy. There being no factual record before the District Judge or this court, no determination can now be made as to why and how ratification votes were limited to the national and central states agreements excluding the Michigan Rider or as to whether there were "Riders" negotiated in other states and made subject to ratification votes there.
 
 
 18
 We emphasize that this litigation was begun in 1973 and has produced an almost endless outpouring of legal and judicial writing on largely hypothetical issues without the benefit of one sworn pleading, one affidavit, one stipulation of fact or one bit of evidence. Even the center of the dispute, the constitution of the union, is not properly in evidence at the present writing.
 
 
 19
 As to the cause of action stated in Count II pertaining to § 101(a)(1), we affirm the judgment of the District Court.
 
 
 20
 Breach of Contract under § 301(a) (Counts I and III)
 
 
 21
 The most difficult problems in this case are those posed by plaintiffs' two claims based upon § 301 of LMRA. As we have noted, the District Judge dismissed plaintiffs' cause of action based upon an asserted breach of contract under § 301(a). Her reasoning merits quotation:
 
 
 22
 Defendants urge that plaintiffs' first cause of action, namely, breach of the Union Constitution under Section 301(a), must be dismissed because that Section does not extend to suits by individual union members against their local and international union for alleged breach of Union Constitutional provisions. Section 301(a) provides:
 
 
 23
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. (Emphasis added.)
 
 
 24
 Defendants urge that suits between union members and their own union are not suits "between any such labor organizations." Defendants note that in Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886 (4th Cir. 1963) cert. denied 372 U.S. 976 (83 S.Ct. 1111, 10 L.Ed.2d 142) (1963), the Fourth Circuit affirmed the district court's decision that it had jurisdiction under this section in an action between a local union and certain of its members against the parent international union. Although that action involved a constitutional dispute, as does the instant case, it was a suit brought by a local asserting autonomy. It was thus an action between labor organizations.
 
 
 25
 The Tenth Circuit in Adams v. International Brotherhood of Boilermakers, 262 F.2d 835 (10th Cir. 1958), after holding that the Union Constitution was a contract, ruled that Section 301 did not confer jurisdiction on the district court in a suit between a labor organization and their members.
 
 
 26
 A similar conclusion was reached by the Ninth Circuit in Svacek v. Hotel and Restaurant Employees, Local 400, 431 F.2d 705 (9th Cir. 1970), an action brought by a local union against one of its members. That court said, at page 706:
 
 
 27
 We have been cited to no authority that would permit the union constitution to be used as a contract for jurisdiction under Section 301 in an intra-union problem unrelated to a collective bargaining agreement. Nor do we believe that it was the intent of Congress for the courts to use the Labor Management Relations Act to police intra-union problems.
 
 
 28
 The Second Circuit reached a somewhat opposite conclusion in Abrams v. Carrier Corp., et al., 434 F.2d 1234 (2nd Cir. 1970). It permitted individual union members to sue their international union for alleged breach of contractual rights established by the charter and bylaws. It apparently felt compelled to do so by analogy to the Supreme Court's decision in Smith v. Evening News Association, 371 U.S. 195 (83 S.Ct. 267, 9 L.Ed.2d 246) (1962). However, Smith v. Evening News Association does not, in the Court's opinion, require this expanded interpretation of Section 301. Smith v. Evening News Association dealt with an action by individual union members against their employer based on the collective bargaining agreement. Over the years there has been the judicial creation of a Federal common law in the area of collective bargaining. This was expressly recognized in Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448 (77 S.Ct. 912, 1 L.Ed.2d 972) (1957). There has not been, however, this same tradition of Federal resolution of intra-union disputes and no Federal common law has developed in this area. Indeed, Congress in LMRD has provided statutory guidelines as to areas of intra-union affairs which the Federal courts would concern themselves with. In Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, et al. v. Lockridge, 403 U.S. 274 (91 S.Ct. 1909, 29 L.Ed.2d 473) (1971), the Supreme Court, in discussing Section 301(a) jurisdiction limited the applicability of Smith v. Evening News Association to contracts between unions and employers in stating:
 
 
 29
 . . . the principle of Smith v. Evening News is applicable only to those disputes that are covered by the terms of the collective bargaining agreement itself.
 
 
 30
 403 U.S. at 300-301 (91 S.Ct. at 1925).
 
 
 31
 In view of this limitation, this Court declines to follow Abrams. The Court is without jurisdiction under Section 301(a) to determine the intra-union dispute alleged in Count One. If plaintiffs have a remedy on this cause of action it is in the State court.
 
 
 32
 As we have indicated, we affirm the District Judge's dismissal of the action based upon a breach of contract under § 301(a). The language of § 301(a) authorizes in its terms "Suits for violation of contracts . . . between any such labor organizations." We see no reason why such a contract might not be expressed in a union constitution, a local union charter, or a combination of both. See Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886 (4th Cir. 1963); Adams v. International Brotherhood of Boilermakers, 262 F.2d 835 (10th Cir. 1958).
 
 
 33
 Our instant issue, however, poses the broader question as to whether contractual rights between labor organizations expressed in union constitutions and charters can be enforced in § 301 suits by individual union members as third party beneficiaries. We recognize that dictum in the Lockridge case seems to answer this question in the negative. Plaintiffs-appellants (members) contend that the Smith case answers it in the affirmative. Neither case, however, dealt with construing a union constitution as a contract for § 301(a) purposes or authorized individual member suits against a union.
 
 
 34
 Our reasons for affirmance of the District Judge on this are primarily the reluctance of Congress and the courts to authorize judicial intervention in the internal affairs of unions, and secondarily, that Congress and the courts have provided other specific and complete remedies for plaintiffs' cause of action in this case.
 
 
 35
 We can conceive of no evidence which plaintiffs might tender at trial of this case which could not be offered under § 101(a)(1) or under the theory of unfair representation. Since Congress and the courts have provided specific and complete remedies for the instant case, we see no need to employ it to make a decision on the difficult general question of individual union member third party beneficiary suits against unions based on union constitution and charter; and we specifically decline to do so.
 
 Unfair Representations (Count III)
 
 36
 As indicated above, plaintiffs-appellants (members) also seek to state a claim based on an alleged breach of the defendants-appellees' (unions) duty of fair representation. The District Judge held that the allegations on this issue did not constitute "substantial evidence of discrimination that is intentional, severe and unrelated to legitimate union objectives . . . ." Amalgamated Association of Street Electric Railway and Motor Coach Employees of America v. Lockridge, 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971).
 
 
 37
 We reiterate that to date in this litigation, we have no "evidence" at all. We, of course, construe the complaint favorably to plaintiffs as we must on the grant of a motion to dismiss.
 
 
 38
 So construed, we believe that it may be read as claiming that the defendants (unions), in negotiating the Michigan Rider, deliberately served employer interests by renegotiating wages below an already nationally contracted level, concealed these facts from the union membership, and in violation of the union constitution, refused to allow a vote on the Michigan Rider, knowing that it would be rejected by the membership. We recognize that no one of these "facts" has been established and may well never be. But the claims appear to assert "intentional" and "severe" discrimination, which is "unrelated to a legitimate union purpose" and hence to be well within the language of Lockridge. The same reading of plaintiffs-appellants' (members) claims would also, if established by evidence, constitute conduct which is "arbitrary, discriminatory, or in bad faith" on the part of the unions within the holding of Vaca v. Sipes, 386 U.S. 171, 190-93, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
 
 Exhaustion of Remedies
 
 39
 Defendants-appellants (unions) make perhaps their strongest argument for complete dismissal of this action in claiming that plaintiffs-appellees and cross-appellants (members) failed to exhaust remedies. This defense may well prove to be of decisive importance at trial, but like the District Judge, and for the reasons she stated in her opinion and order of June 28, 1974, we agree that it is relied upon prematurely at this point.
 
 Pendent State Claims
 
 40
 We also affirm the District Judge's denial of defendants-appellants' (unions) motion to dismiss plaintiffs' pendent state claims based on violation of contract. It appears from the complaint that this state claim may involve the same operative facts that are involved in proof of plaintiffs' federal claims under § 101(a)(1) and the unfair representation claims under § 301.
 
 
 41
 For the reasons stated, the judgment of the District Court is affirmed in all respects except the dismissal of the unfair representation claims (as to which judgment is vacated) and the case is remanded for trial.
 
 
 
 *
 Judge William E. Miller died April 12, 1976, and did not participate in this decision
 
 
 [1]
 Plaintiffs' complaint also stated § 301 and state law claims against the Michigan Carriers Employers' Association (MCEA). On motion to dismiss the complaint filed by defendant Employers' Association, the District Judge, in a separate opinion, dismissed the complaint in its entirety as it applied to that defendant. She held that the Employers' Association was not an employer of the employees concerned, was not a contracting party to the collective bargaining contract at issue (even though as agent for Michigan trucking concerns it had negotiated it) and that a suit for money damages for wages not paid and for injunctive relief to compel payment of wages could not lie against the association. This court has already affirmed her dismissal of defendant Employers' Association by the following order entered November 6, 1975:
 "Before: PECK, McCREE and MILLER, Circuit Judges.
 Upon motion of the defendant and cross-appellee, Motor Carriers Employers' Association of Michigan, which motion the court being fully advised in the premises concludes to be well taken,
 IT IS ORDERED that the cross-appeal docketed herein September 12, 1975, insofar as it applies to the 'Opinion and Order and Judgment Granting Motion to Dismiss of Motor Carriers Employers' Association of Michigan' be and it hereby is dismissed."
 This order left in effect the District Judge's soundly reasoned Opinion and Order Granting Motion to Dismiss of Motor Carriers Employers' Association.
 No motion for rehearing or petition for certiorari to the United States Supreme Court was filed and this order became final. This appeal cannot now be revived.
 
 
 [2]
 See Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 993-95 (2d Cir.), cert. denied, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975); Johnson v. Alldredge, 488 F.2d 820, 822-23 (3d Cir. 1973), cert. denied, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974); Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir.) (dictum), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); Capital Temporaries, Inc. v. Olsten Corp., 506 F.2d 658 (2d Cir. 1974); Mills v. Electric Autolite Company, 403 F.2d 429 (7th Cir. 1968), vacated on other grounds, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)