**BLE INTERNATIONAL REFORM COMMITTEE, et al., Plaintiffs,**

v.

**John F. SYTSMA, et al., Defendants.**

No. C85–1799.

United States District Court,
N.D. Ohio, E.D.

October 9, 1985.

Alan Belkin, Shapiro, Turoff & Gisser, Cleveland, Ohio, Jeffrey Freund, Bredhoff & Kaiser, Washington, D.C., for plaintiffs.

Harold A. Ross, Cleveland, Ohio, for defendants.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On June 26, 1985, plaintiffs filed the above-captioned case alleging violations of Title I of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 et seq., Title V of the LMRDA, 29 U.S.C. § 501 et seq., and state contract law.[1] Plaintiffs are (1) members of the International Brotherhood of Locomotive Engineers ("BLE")—Arlow W. Gall, T.L. Henderson, William W. Musgrave, and Clyde G. Coble; (2) an unincorporated and unchartered association of BLE members, the BLE International Reform Committee; and (3) a local division of the BLE, Division 286. The defendants are the BLE and three of its officers—President John F. Sytsma, First Vice-President W.J. Wanke, and General Secretary-Treasurer John D. Rinehart. Plaintiffs allege jurisdiction under 28 U.S.C. §§ 1331[2] and 1337[3] and 29

U.S.C. §§ 412[4] and 501(b)[5] and aver pendent state law claims.

The case is currently before the court on the defendants' motion for summary judgment.[6] For the reasons stated below, the court grants their motion.

### I

The BLE has approximately seven hundred (700) Local Divisions and thirty-two thousand (32,000) members. The BLE has an advisory board consisting of fifteen (15) union officials. Its executive authority rests in a committee of which the three individual defendants compose the entire membership.

The constitution of the BLE provides a method for removing one individual from office and replacing him with another. It mandates that either twenty-five (25) percent of the active membership or divisions representing twenty-five (25) percent of the active membership may petition for a recall vote. If the requisite number of members or divisions petition for the recall, then the constitution allows either two (2) percent of the members or divisions representing two (2) percent of the members to place their candidate on the same ballot as that used to vote in the recall election. If the majori-

---

1. Plaintiffs originally alleged an additional cause of action under 29 U.S.C. § 185. On August 12, 1985, they filed an amended complaint by which they withdrew this count.

2. 28 U.S.C. § 1331 provides:
   The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

3. 28 U.S.C. § 1337 provides:
   The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

4. 29 U.S.C. § 412 provides, in pertinent part:
   Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate....

5. 29 U.S.C. § 501(b) provides, in pertinent part:

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte....

6. In addition, the defendants moved the court to reconsider and set aside its order granting plaintiffs' leave to file the Title V claim. Because of the court's disposition of the motion for summary judgment, it need not decide this issue.

ty of the votes cast are for the recall, then the constitution provides that the union will tabulate votes cast for new candidates. When a petition seeks the recall of the president, the constitution places authority in the secretary-general to conduct the recall election.

On August 7, 1984, Division 286 circulated a petition to recall Sytsma.

Sytsma took the following actions to prevent the local from securing the requisite number of signatures: He wrote two letters to all division presidents and secretary-generals and convened three meetings of different lower level officers of the BLE. Further, he published a "Memo from the President," in the *Locomotive Engineer,* the official BLE newspaper. He financed each of these actions with BLE funds.

By the end of October, 1984, Division 286 secured sufficient signatures to compel a recall election. Simultaneously, it nominated a candidate for president.

On November 5, 1984, Secretary-General Rinehart notified the BLE membership that he would conduct a recall election and established rules by which to do so.

On November 26, 1984, he mailed official ballots and return envelopes directly to each member. He placed the name of the member on the return envelope to whom he sent it. He set a limit of sixty (60) days for the return of the ballot.

Rinehart established a two-tiered method by which to count the votes. First, he told the individual members to return their ballots in the official envelopes to the secretary-treasurer of their division. He charged the local presidents and secretary-treasurers to act impartially as agents for the BLE and him and to count their members' votes fairly and correctly. He provided each division with an official tally sheet on which to record the votes.

Second, Rinehart instructed the secretary-treasurer of each division to send the official tally sheet to the accounting firm of Kubinec and Burg in Cleveland, Ohio no later than 4:30 p.m. on February 25, 1985.

At that time, Rinehart started tabulating votes.

During the sixty (60) days after Rinehart sent out the ballots, Sytsma took the following actions to oppose his recall: He requested various division presidents and secretary-treasurers to act as his observers during the tallying of their members' votes. He directed certain BLE officials to campaign against the recall and wrote letters to the members of the BLE. And, he published another "Memo from the President" in the *Locomotive Engineer.* He financed these actions with BLE funds.

On January 25, 1985, Rinehart declared that the recall had failed by a vote of five thousand three hundred eighty-seven (5,387) to five thousand one hundred ninety-eight (5,198). Thus, ten thousand five hundred eighty-five (10,585) members effectively voted out of thirty-two thousand (32,000) in the BLE.

Rinehart did not count all votes which the members cast. He did not count a number of ballots which members sent directly to Cleveland nor one hundred fifty-four (154) ballots which local divisions impounded. In fact, he tabulated the tally sheets from only five hundred fifty-three (553) of the seven hundred (700) divisions. He never received the tally sheets from approximately one hundred (100) divisions and received the tally sheets from thirty-seven (37) divisions after the deadline which he had established.

Plaintiffs allege that the following actions infringed their rights under Title I: (1) Rinehart denied them a right to a secret ballot. (2) Sytsma intimidated union officials and employees into opposing his recall and directed other officials to campaign against it. (3) He financed these acts with BLE funds. (4) Wanke, Rinehart and the union permitted him to do these acts. (5) Lastly, the defendants failed to count all the properly cast ballots.

Plaintiffs also allege that the defendants breached fiduciary duties which Title V imposed on them as union officers by improperly expending union funds, improperly authorizing others to expend such funds, and

denying the plaintiffs the "right to participate freely and democratically in the affairs of the BLE."

Plaintiffs seek to enjoin implementation of the results of the recall election, further improper expenditures, and further interference with their rights to participate freely and democratically in the affairs of the BLE. They seek a new recall election. Lastly, they ask for damages and an accounting and reimbursement of BLE funds.

Defendants move for summary judgment on the ground that the court lacks subject matter jurisdiction over this action. Essentially, they contend plaintiffs allege claims cognizable only under Title IV of the LMRDA, 29 U.S.C. § 481 et seq., over which the Secretary of Labor has exclusive jurisdiction.

## II.

Title IV establishes maximum terms of office for union officers and procedures for filling those offices. 29 U.S.C. § 481. It sets five (5) years as the maximum term for an officer of an international union and requires the union to select officers by either an election or a convention of delegates. 29 U.S.C. § 481(a). For elections, it mandates a secret ballot, protects members from "improper interference" with the exercise of their vote, commands the union to count the votes which each member of a local union casts, and prohibits the use of union funds to promote the candidacy of any nominee. 29 U.S.C. § 481(a), (e), (g). Alternatively, it allows a convention of delegates to choose the union's officers. 29 U.S.C. § 481(f).

Title IV vests exclusive jurisdiction to enforce these provisions in the Secretary of Labor. 29 U.S.C. § 483. It allows "[a] member of a labor organization to file a complaint with the Secretary ... alleging violation of any provisions of section 481 ... (including violation of the constitution and bylaws ... pertaining to the election and removal of officers)." 29 U.S.C. § 482(a). It authorizes the Secretary to bring an action in a federal district court:

to set aside the invalid election, ... and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary....

29 U.S.C. § 482(b).

Title I is a Bill of Rights for union members. 29 U.S.C. § 411 et seq. It guarantees every member equal rights and privileges in elections. 29 U.S.C. § 411(a). It assures them freedom of speech and assembly. 29 U.S.C. § 411(b). It permits them to bring actions in the district court to seek "such relief (including injunctions) as may be appropriate" to address violations of these rights. 29 U.S.C. § 412.

Title V imposes a duty on union officers to "hold [the union's] money and property solely for the benefit of its members." 29 U.S.C. § 501(a). This subsection authorizes the equivalent of a shareholder derivative action by permitting the member to sue in a federal district court "to secure an accounting or other appropriate relief for the benefit of the labor organization." 29 U.S.C. § 501(b).

The federal courts lack jurisdiction over post-election suits which allege violations of Title I when in substance the suit concerns rights which Title IV secures. *Local No. 82, Furniture and Piano Moving Furniture Store Drivers, Helpers, Warehouseman and Packers v. Crowley*, 467 U.S. 526, 545, 104 S.Ct. 2557, 2568, 81 L.Ed.2d 457 (1984) ("Piano Movers"); *McGuire v. Grand International Division of the Brotherhood of Locomotive Engineers*, 426 F.2d 504, 508 (6th Cir.1970) ("McGuire"). This rule recognizes the exclusive jurisdiction of the Secretary over post-election challenges. Congress intended:

(1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted with respect to a single election.

*Piano Movers, supra,* at 549, 104 S.Ct. at 2570 (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 535, 92 S.Ct. 630,

634, 30 L.Ed.2d 686 (1972)). The Secretary also has exclusive jurisdiction over suits which allege Title V violations but which in substance aver claims under Title IV. *Camarata v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen Helpers of America* ("Camarata"), 1978 Labor Relations Cases (CCH) ¶ 10,957 (1978). Congressional concerns with frivolous suits, unnecessary judicial interference, and inefficiency are equally applicable to both Titles I and V.

### III

■ Plaintiffs argue that this suit in substance is outside the exclusive jurisdiction which Congress gave the Secretary. They contend that Title IV applies only to regularly scheduled elections and rely on regulations of the Secretary and the plain language of the statute.

Plaintiffs cite a regulation of the Secretary which provides:

Title IV governs the regular periodic elections of officers in labor organizations subject to the Act. No requirements are imposed with respect to the filling by election or other method of any particular office which may become vacant between such regular elections.

29 C.F.R. § 452.25.

Plaintiffs use this regulation to bolster their argument that the plain language of the statute limits the Secretary's jurisdiction to violations which occur during regularly scheduled elections. Plaintiffs focus on two subsections of Title IV: 29 U.S.C. §§ 481(e) and 481(g). Section 481(e) establishes member rights for "any election *required by this section*...." (emphasis added). Section 481(g) protects against union spending in favor of candidates for union office in "an election *subject to the provisions of this subchapter.*" (emphasis added). Plaintiffs argue that because Title IV establishes a maximum five (5) year term of office and since the quoted language limits the category of elections which Title IV covers, the proper interpretation of Title IV limits its scope to regularly scheduled elections.

Plaintiffs' arguments are unpersuasive. First, the Secretary's regulation is nonbinding. The Secretary recognizes this:

Interpretations ... with respect to the election provisions of Title IV are set forth in this part to provide those affected by these provisions of the Act with "a practical guide * * * as to how the office representing the public interest in its enforcement will seek to apply it." The correctness of an interpretation can be determined finally and authoritatively only by the courts.

29 C.F.R. § 452.1(b) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 138, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944)).

Second, the plain language does not support plaintiffs' interpretation. The United States Supreme Court has set out the method by which courts should interpret Title IV:

Like much federal labor legislation, the statute was "the product of conflict and compromise between strongly held and opposed views, and its proper construction requires consideration of its wording against its legislative history and in light of the general objectives Congress sought to achieve...." Indeed, in many ways this admonition applies to the interaction of Title I and Title IV of the LMRDA, if only because of the unusual way in which the legislation was enacted.

*Piano Movers, supra* at 541–42, 104 S.Ct. at 2566 (1984) (citations omitted).

The language of Title IV shows that the limitation on its coverage refers to the type of elections, not to their timing or regularity. Section 481(a) does not require regularly scheduled elections. It provides that unions must either directly elect or through a convention of delegates choose their officers "not less often than once every five years."

Sections 481(e) and (f) are parallel subsections which expand upon the "direct election or convention of delegates" requirement of section 481(a). Section 481(e) applies to direct elections and contains the language—"[i]n any election required by

this section"—on which plaintiffs rely. Section 481(f) concerns conventions of delegates and states: "[w]hen *officers* are chosen by a convention of delegates...." (emphasis added). If the language of limitation in section 481(e) referred to section 481(a) and restricted Title IV coverage to regularly scheduled elections, then the same language should appear in section 481(f). For example, section 481(f) could read: "in any convention of delegates required by this section...." It does not. Rather, section 481(f) expressly applies only to the selection of officers. Thus, the language of limitation in section 481(e) must refer to officers. Similarly, section 481(g) also is limited to elections of officers by the language—"an election subject to...." The fact that Title IV does not apply to elections which do not select officers is consistent with this conclusion. *Compare Nienaber v. Ohio Valley Carpenters District Council,* 652 F.2d 1284 (6th Cir.1981); *Trail v. International Brotherhood of Teamsters,* 542 F.2d 961 (6th Cir.1976); *Blanchard v. Johnson,* 532 F.2d 1074 (6th Cir.), *cert. denied,* 429 U.S. 869, 97 S.Ct. 180, 50 L.Ed.2d 149 (1976) (each applying Title I to elections which do not concern officers without discussing the applicability of Title IV) *with Schonfeld v. Penza,* 477 F.2d 899, 902–03 (1973) (assuming without discussion that Title IV applies to the interim election of a union officer).

Congressional history and objectives support this interpretation. While the congressional history no where addresses precisely this issue, the Supreme Court has repeatedly analyzed and drawn certain consistent themes from it. *See* 1959 U.S.Code Cong. and Adm.News, p. 2318. For instance, the Court declared:

> Congress ... decided not to permit individuals to block or delay union elections by filing federal court suits for violations of Title IV. Reliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.

*Calhoon,* 379 U.S. 134 at 140, 85 S.Ct. 292 at 296, 13 L.Ed.2d 190. Recently the Court stated:

> Throughout its consideration of the LMRDA, Congress clearly intended to lodge exclusive responsibility for post-election suits challenging the validity of a union election with the Secretary of Labor. The legislative history of Title IV consistently echoes this theme.

*Piano Movers, supra* at 544, 104 S.Ct. at 2567. In *Piano Movers,* the Court cited approvingly the remarks of Professor Archibald Cox, testifying before the Senate Subcommittee on Labor:

> A court is also a clumsy instrument for supervising an election. The judicial process may be suitable for determining the validity of an election which has already been held; but if it is found invalid, or if no election has been held, judges have few facilities for providing an effective remedy. Merely to order an election might turn authority to conduct the balloting over to the very same officers whose misconduct gave rise to the litigation. The court has no tellers, watchers, or similar officials. It would become mired in the electoral process.

467 U.S. at 544, 104 S.Ct. at 2568, fn. 19.

The court must reject the construction which plaintiffs urge. If adopted, it could prove the first step in the erosion of the remedial scheme which Congress established. Suppose a labor organization opted for a parliamentary system of democracy. Its officers could call for elections more often than once every five years and not do so according to a regular schedule. As long as the union required elections whenever an officer's term extended five years, this procedure would not violate section 481(a). According to the plaintiffs, Title IV would not apply to interim elections which the officers called because they would not be regularly scheduled. Moreover, violations of Title IV rights do not state a cause

of action under Title I. *Calhoon v. Harvey*, 379 U.S. 134, 139–40, 85 S.Ct. 292, 296, 13 L.Ed.2d 190. Thus, union members would lose their Title IV rights, and only the federal courts would stand as the barrier between the union membership and the "widespread abuses of power by union leadership" which Congress intended to address with the LMRDA. *Piano Movers, supra* at 536, 104 S.Ct. at 2563 (quoting *Finnegan v. Leu*, 456 U.S. 431, 435, 102 S.Ct. 1867, 1870, 72 L.Ed.2d 239 (1982)).

## IV.

 Although alleging violations of Title I and V, plaintiffs may not maintain this suit because in substance it seeks relief for violations of Title IV. *Piano Movers, supra* at 545, 104 S.Ct. at 2568. *McGuire, supra* at 508; *Camarata, supra.* The Supreme Court has declared that the relief which a plaintiff seeks is indicative of whether the claim falls within the exclusive jurisdiction of the Secretary. Title IV cases are generally post-election challenges which seek invalidation of the election and the holding of new elections. *Piano Movers, supra* at 542–43, 104 S.Ct. at 2567.

Substantively, plaintiffs present a post-election challenge under Title IV. They claim a violation of their right to a secret ballot which is a right that Title IV guarantees. 29 U.S.C. § 481(a). They allege that the defendants improperly interfered with their right to vote by intimidating union officials and not counting all the ballots cast. These are rights which Title IV assures. 29 U.S.C. § 401(e). Finally, they aver an improper use of union funds during the election, but it is Title IV which prohibits such expenditures. 29 U.S.C. § 481(g).

Plaintiffs seek invalidation of a completed election. If the court were to find that a new election was required, it would have to "turn over the authority to conduct the election to the very officers whose misconduct gave rise to the litigation" and would become mired in the electoral process. *Pi-*

7. Because the court lacks jurisdiction over plaintiffs' federal claims, it has no pendent jurisdiction over their state law claims. *Ash v.*

*ano Movers, supra* at 544, 104 S.Ct. at 2568, fn. 19 (citing testimony of Prof. Cox). It is the Secretary of Labor to whom the plaintiffs should address their claims; the court lacks jurisdiction over them.[7]

Accordingly, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

*Board of Education of Woodhaven School District,* 699 F.2d 822, 828 (6th Cir.1983).