823 F.2d 553
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard E. THOMAS, Peter C. Mientkiewcz, John G. Minnocci,
James K. Kohut, Brian D. Utti, Robert L. Scott,
Plaintiffs-Appellants,
v.
JOINT APPRENTICESHIP COMMITTEE OF PLUMBING & PIPEFITTING
INDUSTRY, LOCAL NO. 225; United Association of Journeymen
and Apprentices of the Plumbing and Pipefitting Industry of
the United States and Canada; United Association of
Journeymen and Apprentices of the Plumbing and Pipefitting
Industry, Local No. 225; Franklin D. Middleton; Herbert
Hickman; Charles Zimmer; Robert Emerich; Thomas
Antenucci; Sam Rizzi; Lewis F. Carbone; Edward F. Byers;
John Prokop; Joseph Poptic, Defendants-Appellees.
 No. 86-3556.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1987.
 
 Before JONES, NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs appeal the district court's order granting summary judgment to defendants in this action filed under 29 U.S.C. Secs. 50, 185 (1982) and 28 U.S.C. Secs. 1331, 1337, 2201 (1982). Because we agree with the district court that plaintiffs have failed to state a claim upon which relief can be granted, we affirm.
 
 
 2
 Plaintiffs are unsuccessful applicants to the apprenticeship program operated by the Joint Apprenticeship Committee of the Plumbing & Pipefitting Industry of Warren, Ohio & Vicinity ("JAC"). (They are, incidentally, not members of the defendant union.) The JAC is composed of three members from the Warren Association of Plumbing, Heating & Cooling Contractors ("Contractors") and three members from the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local No. 225 ("Local 225"). A collective bargaining agreement between the Contractors and Local 225 stipulates that the employer and the union wiH establish an Educational Trust Fund for the training of apprentices. This collective bargaining agreement also states:
 
 
 3
 The Educational Trust Fund shall be controlled and administered by a Board of Trustees composed of an equal number of Employer anti Union Representatives. The Employer and the Union will execute a Trust Indenture Agreement carrying out the purpose of this agreement.
 
 
 4
 J. App. 69. The Trust Indenture Agreement referred to in the collective bargaining agreement appears to be the document entitled "Procedures for Selecting of Apprentices [sicl," J. App. 78, which was formulated by the JAC.
 
 
 5
 When plaintiffs were denied admission to the apprenticeship program, they filed suit for lost wages and equitable relief in federal district court, claiming that their causes of action arose under section 301 of the LMRA and section 1 of the National Apprenticeship Act ("NAA"). Their suit was based on their allegations that the JAC failed to follow the "Procedures for Selecting of Apprentices." The district court held that plaintiffs were not attempting to enforce a collective bargaining agreement, and so no claim was stated under section 301. The court also held that section 1 of the NAA did not create a private cause of action. Therefore, the court held that it had no jurisdiction under 28 U.S.C. Secs. 1331, 1337, and 2201. Accordingly, summary judgment was entered against plaintiffs for failure to state a claim upon which relief could be granted.
 
 
 6
 The first issue on appeal is whether a violation of the "Procedures for Selecting of Apprentices" would constitute a violation of a contract between an employer and a labor organization for the purposes of section 301. Plaintiffs argue that the "Procedures" document itself was a collective bargaining agreement. They seem to argue in the alternative that the "Procedures" document was incorporated into the collective bargaining agreement between the Contractors and Local 225.
 
 
 7
 The Supreme Court has held that the term "contract" in section 301 refers to more than collective bargaining agreements. Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., 369 U.S. 17, 25-28 (1962). However, the Supreme Court also has pointed out that a "contract" should be "an agreement between employers and labor organizations significant to the maintenance of labor peace between them." Id. at 28. See also District 2 Marine Eng. v. Grand Bassa Tankers, Inc., 663 F.2d 392, 396 (2nd Cir.1981) (congressional purpose was to promote industrial peace by ensuring enforceability by federal courts of collective bargaining agreements between employers and labor unions). The document entitled "Procedures for Selecting of Apprentices" does not appear to have as its purpose "the maintenance of labor peace." The local standards adopted by the JAC in the document are modelled on the national standards (developed by a national JAC), for which the object was "[t]o establish the necessary rules to allow a young person to apply for and be part of the plumbing, steamfitting-pipefitting industry." J. App. 91. Similarly, one district court has characterized Joint Apprenticeship Committees as organizations "in which employers and employees are equally represented for the purpose of advancing a common interest--the proper training of apprentices in the field." NECA v. Wallace, 114 LRRM 3037, 3038 (E.D.Cal.1983). Thus, we conclude that the -JAC's document entitled "Procedures for Selecting of Apprentices" is not the sort of agreement referred to in section .101.
 
 
 8
 We also agree with the district court that the collective bargaining agreement's references to the establishment of an Educational Trust Fund and the execution of a Trust Indenture Agreement do not mean that the "Procedures for Selecting of Apprentices" is a part of the collective bargaining agreement. Although separate documents can be used to define the rights of the parties under a collective bargaining agreement, some intent to incorporate those separate documents must be shown. See Alvares v. Erickson, 514 F.2d 159, 161 (9th Cir.), cert. denied, 423 U.S. 874 (1975). The collective bargaining agreement at issue in the instant case calls only for the creation of the Educational Trust Fund and the Trust Indenture Agreement. Unlike the collective bargaining agreement in Alvares, this collective bargaining agreement does not explicitly incorporate the specific provisions of the separate documents. Therefore, the "Procedures for Selecting of Apprentices" is neither a "contract" itself nor a part of a collective bargaining agreement under section 301.
 
 
 9
 Plaintiffs' next argument on appeal is that the district court erred in holding that section 1 of the NAA does not create an independent cause of action against the defendants. Section 1 states:
 
 
 10
 The Secretary of Labor is authorized and directed to formulate and promote the furtherance of Labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and Labor for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship ....
 
 
 11
 Pursuant to the Act, the Department of Labor ("DOL") has promulgated regulations setting forth policies and procedures to be followed by state apprenticeship programs, and has established procedures for review of such programs. The regulations also set forth a complaint procedure to be followed by apprentices or applicants who claim that the policies have not been properly followed. See 29 C.F.R. Sec. 30.11 (1989). Finally, the regulations provide that when the DOL determines that a program has not followed the proper procedures, the DOL shall institute proceedings to deregister the program or refer the matter to the EEOC or the Attorney General for legal action. Id. at Sec. 30.13(a).
 
 
 12
 In light of the Act's explicit grant of authority to the Secretary of Labor to develop safeguards for apprenticeship standards, we do not believe that a private cause of action can be implied under Cort v. Ash, 422 U.S. 66 (1975). Cort v. Ash requires us to look for indications of congressional intent to create or to deny a remedy. Id. at 78. It also requires us to determine whether implicating a private remedy is inconsistent with the underlying purpose of the legislative scheme. Id. The statutes regarding apprentice labor indicate that the Secretary of Labor is to oversee and cooperate with all those who are concerned with the welfare of apprentices. We do not believe that the statutes reflect any intention to give apprentices the right to sue if the cooperative process fails. Instead, the regulations outline a procedure whereby apprentices can call to the attention of the Secretary any flaws in the system. Thus, a right to sue without at least first notifying the Secretary would conflict with both the statutory and regulatory scheme. Accordingly, we agree with the district court that no right to sue is created under section 1.
 
 
 13
 Since no cause of action exists under either section 301 of the LMRA, 29 U.S.C. Sec. 185, or section I of the NAA, 29 U.S.C. Sec. 50, plaintiffs cannot claim jurisdiction under 28 U.S.C. Secs. 1331, 1337 or 2201.
 
 
 14
 We therefore AFFIRM the judgment of the district court.
 
 
 15
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 16
 Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185, gives the United States district courts subject-matter jurisdiction over "[s]uits for violation of contracts between an employer and a Labor organization representing employees in an industry affecting commerce ...."
 
 
 17
 Defendant Local No. 225, a Labor organization representing employees in an industry affecting commerce, signed a collective bargaining agreement with an association of employers in Trumble County, Ohio. Article VI of that agreement, captioned "APPRENTICES," provided among other things that
 
 
 18
 "The employer and the union hereby agree to set up and establish an Educational Trust Fund for the training of apprentices.
 
 
 19
 * * *
 
 
 20
 The Employer and the Union will execute a Trust Indenture Agreement carrying out the purpose of this agreement."
 
 
 21
 The employer and the union did execute such a Trust Indenture Agreement. The Agreement apparently established the Joint Apprenticeship Committee--composed of three members representing the employer and three members representing the union --that formulated the apprentice selection "Procedures" at issue here. The district court held, in effect, that the Agreement and the Procedures did not constitute a "contract" enforceable in federal court under Sec. 301. This court agrees. I do not, and must therefore dissent.
 
 
 22
 If the Agreement and Procedures are viewed as a constitution or charter for the apprenticeship program, I take it that under federal law such a charter is a "contract." See Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 627, 4 L.Ed. 629, 656 (1819), where Chief Justice Marshall, speaking for the Supreme Court, said that it "can require no argument to prove" that in the granting of a charter for Dartmouth College, followed by transfers of property in reliance on the charter's validity, "every ingredient of a complete and legitimate contract is to be found."
 
 
 23
 In Trail v. International Brotherhood of Teamsters, 542 F.2d 961, 968 (6th Cir.1976), which involved contracts between Labor organizations, our court said "[w]e see no reason why such a contract [an inter-union contract enforceable under Sec. 301] may not be expressed in a union constitution, a local union charter, or a combination of both." I see no reason, similarly, why a "contract" enforceable under Sec. 301 may not be expressed in the Trust Indenture Agreement executed by the employer and Labor organization with which we are concerned here, or in the Procedures jointly agreed to by representatives of the employer and the union.
 
 
 24
 The fact that there is a "contract" between an employer and a union does not necessarily mean, to be sure, that the provisions of the contract can be enforced in Sec. 301 suits brought by third-party beneficiaries. Trail suggests that the plaintiffs in the case at bar might not have been able to sue under Sec. 301 if Congress had given them an adequate remedy under the National Apprenticeship Act. Our panel having found that no such remedy exists under the National Apprenticeship Act, however, I would be inclined to read Sec. 301 as confering jurisdiction unless it is evident that the contract on which the plaintiffs rely is not the kind of contract with which Sec. 301 is concerned.
 
 
 25
 Unlike my colleagues, I am unable to see why the contract sought to be enforced in this case is not a "contract between an employer and a Labor organization" within the purview of Sec. 301. Congress clearly did not intend to confine itself in Sec. 301 to collective bargaining agreements dealing with wages, hours, and conditions of employment. Retail Clerks International Association v. Lion Dry Goods, Inc., 369 U.S. 17, 25 (1962). Whatever the outer limits of the jurisdiction conferred by Sec. 301 may be, the Supreme Court has held that Sec. 301 jurisdiction extends at least to suits for violation of "an agreement between employers and Labor organizations significant to the maintenance of Labor peace between them." Lion Dry Goods, 369 U.S. at 28. Here, it seems to me, we have just such an agreement.
 
 
 26
 The legislative history of the National Apprenticeship Act of 1937, 29 U.S.C. 50, pursuant to which the Trust Indenture Agreement was executed, emphasizes the importance of such apprenticeship agreements in the maintenance of Labor peace between employers and Labor organizations:
 
 
 27
 "Distrust and suspicion often develop when either one or the other undertakes the training program alone. It was pointed out to the committee by employers and employees that industry and Labor are being brought together by the Federal Committee on Apprentice Training in a most effective manner to work out and administer apprentice programs .... The experience of this close cooperation between management and Labor on questions of apprenticeship may be expected to influence beneficially other negotiations between management and Labor, with consequent benefits to the whole Nation." H.R.Rep. No. 945, 75th Cong., 1st Sess., 3 (1937).
 
 
 28
 From time immemorial, practitioners of mechanical arts have been interested in the selection of the apprentices who will work with them and one day succeed them. I know of no reason why the selection of young people for initiation into the mysteries of a particular craft may not be the subject of agreement between representatives of employers and representatives of Labor organizations, and I do not know why such agreements could not be "significant to the maintenance of Labor peace between them," as Congress envisioned. Accordingly, I would reverse the judgment of the district court.