**52**

Rodolfo HERNANDEZ, Plaintiff,

v.

Shannon WALL, individually and as President of the National Maritime Union of America and as Trustee of the NMU Pension and Welfare Plans, Thomas Martinez, individually and as Secretary–Treasurer of the National Maritime Union of America and as Trustee of the NMU Pension and Welfare Plans, Louis Parise, James Patterson, Rene Lioeanjie, Andrew Rich, Alvin Zeidel, Helen Concepcion, Harold Dillon, National Maritime Union of America, NMU Pension and Welfare Plan, and NMU Realties, Inc., Defendants.

No. 86 Civ. 9891 (WK).

United States District Court, S.D. New York.

Oct. 7, 1988.

Wendy E. Sloan, Hall & Sloan, New York City, for plaintiff.

Ned R. Phillips, Phillips Cappiello Kalban Hoffman & Katz, P.C., New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff brings this action under § 301(a) of the Labor–Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), alleging violations of the constitution of the National Maritime Union of America (the "Union"). The case is before us on defendants' motion to dismiss for lack of subject matter jurisdiction, lack of standing, failure to state a claim, and untimeliness. For reasons which follow, we find lack of subject matter jurisdiction and grant the motion.

## FACTS

On January 6, 1984, while plaintiff—who for present purposes we shall assume to have been a union member in good standing—was present in the union hall, a television crew entered the hall and began to interview persons there present. The television crew was approached by defendant Zeidel, a union official bearing several titles,[1] who asked who had allowed them into the hall. The crew informed Zeidel that the guard had allowed them in. Plaintiff, according to his own affidavit, without giving Zeidel an opportunity to react to that information, stepped forward and asked Zeidel: "why not allow the interviewer to

---

1. The complaint alleges that Zeidel is the "Social Services Director" for both the Union and the Plan, and that on January 6, 1984 he was also serving as the Union's "Acting Port Agent." Plaintiff's affidavit in opposition to the motion refers to Zeidel as the "Safety Director."

interview the seamen so that they could tell her all the rotten things that were going on in the union hall." Zeidel responded by ordering plaintiff out of the hall, saying "you're not allowed here," and by punching plaintiff twice in the chest, causing him to black out.

The First Amended Complaint further alleges, at ¶¶ 20–21, that on or about November 26, 1984 defendant Concepcion barred plaintiff from attending a Union membership meeting, and that on or about the same day defendant Dillon threatened plaintiff with physical harm and death.

No action was ever filed in state court based on these claims. This action originally asserted claims under §§ 102 and 609 of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 412 and 529, and § 901 of the Organized Crime Control Act of 1970 ("RICO"), 18 U.S.C. § 1964, as well as § 301(a) of the LMRA. Plaintiff has since withdrawn the LMRDA and RICO claims; the First Amended Complaint, the pleading now before us, asserts federal jurisdiction only under § 301(a) of the LMRA, as well as several pendant state law claims. The first cause of action alleges a violation of plaintiff's rights under the Union constitution by virtue of the assaultive and intimidating actions of Zeidel and the other Union officials. The second cause of action alleges a breach of the Union constitution by virtue of the failure of the Union's officer's to administer the affair's of the Union "in accordance with its stated purposes, policies and objectives." The third cause of action asserts a state claim for breach of contract. The fourth and fifth causes of action assert state claims against the Union, the Plan, the individual Union and Plan officers, and NMU Realities, based on "gross negligence and willful, wanton and reckless behavior" in hiring Zeidel and entrusting safety responsibilities to him, given his "vicious and violent and dangerous character."

## DISCUSSION

The primary question presented is whether plaintiff has stated a viable claim under § 301(a) of the LMRA, a negative answer to which would deprive us of subject matter jurisdiction. That section provides:

> Suits for violation of contracts *between an employer and a labor organization* representing employees in an industry affecting commerce as defined in this chapter, or *between any such labor organizations,* may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. (emphasis supplied).

Thus, the question is: has plaintiff alleged a claim on a contract "between an employer and a labor organization," or "between any such labor organizations."

Plaintiff relies heavily on *United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry v. Local 334* (1981) 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 for the proposition that § 301(a) now encompasses all claims based on a breach of a union's constitution. We do not read the holding of that case as allowing so broad a result. In *Plumbing and Pipefitting, supra,* a union local sued the international union of which it was a part, alleging a violation of the international union's constitution. The Supreme Court held that the international constitution was a "contract ... between ... labor organizations" upon which the union local could sue under § 301(a). *Id.,* 452 U.S. at 623–25, 101 S.Ct. at 2550–52. In so holding, the Court overruled earlier precedent in the courts of appeals for various circuits which had limited such actions to disputes having a " 'significant impact on labor management relations or industrial peace.' " *Id.* However, the Court expressly declined "to decide whether individual union members may bring suit on a union constitution against a labor organization." *Id.,* at 627 n. 16, 101 S.Ct. at 2553 n. 16.

In the footnote declining to pass on that question, the Court cited *Smith v. Evening News Assn.* (1962) 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, in which an individual union member was held to have standing to sue his employer under § 301(a) as a third-

party beneficiary of the collective bargaining agreement between the union and the employer, and further directed the reader to "[c]ompare *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1247 (2nd Cir.1970), cert. denied *sub nom. Steelworkers v. Abrams* (1971) 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 with *Trail v. International Brotherhood of Teamsters,* 542 F.2d 961 (6th Cir.1976)." In the portion of the *Abrams* case to which the Court cited, 434 F.2d at 1247, the Second Circuit held that the charter granted to a local by an international union was a "contract ... between ... labor organizations" insofar as it implicated provisions of the international's constitution, and that individual members of the local—provided they established that their local had in bad faith refused or would inevitably refuse to request the assistance of the international—could sue the international as third-party beneficiaries of the local's charter. *Id.*, at 1247–48. In *Trail, supra,* insofar as here relevant, the district court had specifically declined to follow *Abrams* on the question of granting relief under § 301(a) to individual union members suing for breach of a union constitution as third-party beneficiaries. *See* 542 F.2d at 967 (quotation from district court's opinion). The Sixth Circuit affirmed the district court's dismissal of the § 301(a) claim on the ground, *inter alia,* that such claim amounted to mere surplusage in the case before it, and accordingly declined to rule on the district court's reasoning as to the third-party beneficiary issue.

■ The significance of the cases cited in footnote 16 of the *Plumbing and Pipefitting* opinion, insofar as the question of jurisdiction under § 301(a) is concerned, is that each of them deals with the question of whether and under what circumstances individual union members may bring a *third-party beneficiary* action, either against their employer on a collective bargaining agreement, *see Smith, supra,* or against their international union on the union constitution, *see Abrams; Trail, supra.* The Court has thereby indicated that if individual union members may sue at all on a union constitution under § 301(a), it is

only as third-party beneficiaries of the constitution insofar as it is a "contract ... between ... labor organizations." There is nothing in those cases—or in any other that has been brought to our attention or of which we are aware—to suggest that the plain meaning of that phrase can be ignored, and that a federal court can entertain an action by a union member on the basis of his *personal* contract with either his local or his international union.

■ In sum, we hold that a suit by an individual union member against a union based on violation of that union's constitution is only within the scope of § 301(a) if the suit is cast as an action to enforce provisions of the defendant union's constitution that contractually bind the defendant union to another "labor organization" to which the plaintiff belongs, where the plaintiff can claim the status of a third-party beneficiary of those provisions. *See, e.g., Abrams, supra; Santos v. District Council of New York City,* 547 F.2d 197 (2nd Cir.1977) (individual union members permitted to sue another union to enforce arbitral award made pursuant to arbitration provisions of AFL–CIO Constitution).

The case at bar does not fit such a cast. Plaintiff does allege that the NMU Constitution is "a contract between NMU and its members, and certain subordinate bodies and other labor organizations,...." First Amended Complaint at ¶ 5. However, he alleges violations of provisions of the NMU Constitution, and of rights, customs and practices thereunder, whose benefits run directly to him and to other union members, rather than to some other "labor organization" to whom the Union is contractually bound through the NMU Constitution. *Id.*, at ¶¶ 19–21, 27–28. Plaintiff's suit is therefore clearly based on the NMU Constitution as a "contract between NMU and it members," rather than as a "contract between NMU and ... certain subordinate bodies and other labor organizations." Accordingly, we have no jurisdiction under § 301(a) to entertain his claims, and we dismiss the claims asserted under that statute, along with the pendant state claims.

## CONCLUSION

For the reasons stated above, the complaint is dismissed in its entirety for lack of subject matter jurisdiction. Let the Clerk enter an appropriate judgment.

SO ORDERED.